IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION

| | | |
|---|---|---|
| CORTEZ CODY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 18-06185-CV-SJ-ODS |
| | ) | |
| PINNACLE STAFFING GROUP, | ) | |
| | ) | |
| Defendant. | ) | |

<u>ORDER AND OPINION DENYING DEFENDANT'S
MOTION FOR TRANSFER OF VENUE</u>

Pending is Defendant's Motion for Transfer of Venue. Doc #3. For the following reasons, Defendant's motion is denied without prejudice.

## I.   BACKGROUND

On November 9, 2018, Plaintiff Cortez Cody filed a putative class action against Defendant Pinnacle Staffing Group ("PSG") in the Circuit Court of Clinton County, Missouri, alleging violations of the Fair Credit Reporting Act ("FCRA"). Doc. #1-1. Cody contends PSG took an adverse action against him when it decided not to hire him based upon information in a consumer report. *Id.* Cody also claims PSG violated the FCRA by (1) not giving him a reasonable opportunity to review and challenge the consumer report, (2) not providing a summary of FCRA rights to him before PSG took the adverse action, and (3) not furnishing copy of the consumer report to him before PSG took the adverse action. *Id.*

On December 17, 2018, PSG removed the matter to this Court. Doc. #1. Contemporaneously, PSG moved to transfer this case to the United States District Court for the District of Kansas pursuant to 28 U.S.C. § 1391(b) and 28 U.S.C. § 1404(a). Doc. #3. After Cody failed to timely respond to PSG's motion, the Court directed Cody to show cause why PSG's motion should not be granted. Doc. #7. Thereafter, Cody filed his opposition to PSG's motion. Doc. #10. PSG filed its reply. Doc. #11. The motion is now fully briefed.

## II. DISCUSSION

### A. Plaintiff's Motion to Transfer Pursuant to 28 U.S.C. § 1391(b)

Whether venue is improper is "generally governed by 28 U.S.C. § 1391." *Atl. Marine Constr. Co. v. United States Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 55 (2013). Section 1391 states a civil action may brought in the following:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b)(1)-(3). "When venue is challenged, the court must determine whether the case falls within one of the three categories" in section 1391(b). *Atl. Marine Constr.*, 571 U.S. at 56. If the case fits one of the three categories, venue is proper. *Id.* If not, the Court must dismiss or transfer the case pursuant to section 1406(a). *Id.* "Whether the parties entered into a contract containing a forum-selection clause has no bearing on whether a case falls into one of the categories…listed in § 1391(b)." *Id.*

PSG contends venue is improper because it does not reside in Missouri. Its principal place of business is in Kansas, and it is licensed to do business in Kansas. But what PSG fails to discuss is whether it is subject to this Court's personal jurisdiction. For purposes of determining proper venue, an "entity…shall be deemed to reside…in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question…." 28 U.S.C. § 1391(c)(2); *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 28 n.8 (1988) (stating venue is proper in a judicial district in which the corporation is doing business) (citation omitted). When a State has multiple district courts, as Missouri does, a "corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State…." 28 U.S.C. § 1391(d).

PSG concedes it bears the burden of establishing improper venue. Doc. #4, at 4; *see also United States v. Orshek*, 164 F.2d 741, 742 (8th Cir. 1947) (stating the defendants had the burden of proving they were not residents of the district in which the

matter was filed).  Although PSG argues its "only connection with the [S]tate of Missouri for purposes of this action is that Plaintiff resides there" (Doc. #4, at 4), PSG does not discuss or address its contacts, or lack thereof, with the Western District of Missouri. Thus, PSG has not established venue is improper under 28 U.S.C. § 1391(b)(1).  For this reason, PSG's motion to transfer venue pursuant to 28 U.S.C. § 1391 is denied.[1]

### B.  Plaintiff's Motion to Transfer Pursuant to 28 U.S.C. § 1404(a)

Section 1404(a) "provides a mechanism for enforcement of forum-selection clauses that point to a particular federal district."  *Atl. Marine Constr.*, 571 U.S. at 59. This section codifies "the doctrine of *forum non conveniens* for the subset of cases in which the transferee forum is within the federal court system…."  *Id.* at 60.  "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  28 U.S.C. § 1404(a). The Supreme Court has held "proper application of § 1404(a) requires that a forum-selection clause be 'given controlling weight in all but the most exceptional cases.'"  *Atl. Marine Constr.*, 571 U.S. at 54 (quoting *Stewart Org.*, 487 U.S. at 33).

Before determining whether a valid forum selection clause exists, the Court must first determine whether the parties have an agreement.  Cody sued PSG, but both parties agree Cody signed an application for employment with Pinnacle Employer Group ("PEG").  Doc. #1-1, at 2; Doc. #3, at 1 n.2; Doc. #4-1, at 2; Doc. #10, at 6-7; Doc. #11, at 1.  PSG generally refers to Cody's "application," but the "application" consists of three documents:  (1) a document entitled "application"; (2) a W-4; and (3) a document welcoming the recipient to PEG, directing the recipient to read the policies and procedures contained therein, and sign and date the document.  Doc. #4-1, at 5-8.[2]

---

[1] PSG also argues venue is not appropriate under the other section 1391(b) categories. Because PSG has not established this matter could not be brought in this Court under section 1391(b)(1), the Court does not need address the other categories.
[2] The parties' briefing and exhibits do no clarify if the "application" consists of the three documents, or if the documents were presented separately.  While the application and the W-4 provide insight into the identity of the contracting party, the Court's decision focuses on the document containing the forum selection clause.

3

With regard to the document labeled application, the top right-hand corner of the first page reflects the following:



Doc. #4-1, at 5. As best the Court can discern, "Staffing" was written in a blank space between "Pinnacle" and "Group." But "Staffing" was crossed out. And, although cut off in the document provided to the Court, it appears "Employer" was handwritten above that. On the same day he signed the application, Cody executed a W-4, which lists PEG as the employer:

| (This form is not valid unless you sign it.) ▶ [signature] | | Date ▶ 7-11-18 |
|---|---|---|
| 8  Employer's name and address (Employer: Complete lines 8 and 10 only if sending to the IRS.) Pinnacle Employer Group, 1311 E. Santa Fe, Olathe, KS 66061 | 9 Office code (optional) | 10 Employer Identification number (EIN) 81-1601270 |

*Id.* at 7.

Along with the application and W-4, Cody signed a document welcoming him to "Pinnacle Employer Group." *Id.* at 7-8. The top of that document appears as follows:

**WELCOME TO PINNACLE EMPLOYER GROUP**

Please carefully read, sign and date the following Pinnacle Employer Group Policies and Procedures

Pinnacle EMPLOYER GROUP

Our work assignments generally include the following critical physical requirements:
- Standing for long periods - bending and stooping
- Repeatedly lifting and carrying up to 50 pounds
- Working around dust and wearing a respirator
- Grip, grasp or twist using your hands and wrist

Please advise the dispatcher if you have any questions concerning these requirements -and we will attempt to find an employment opportunity that matches your specific abilities.

Pinnacle Employer Group is committed to the policy of equal employment opportunity and to a program of affirmative action in order to fulfill that policy

*Id.* at 7. Cody is directed to "carefully read, sign and date the following Pinnacle Employer Group Policies and Procedures." *Id.* at 7. Contained in this document is the forum selection clause at issue:

> I hereby agree that any disputes arising out of my employment with Pinnacle Employer Group shall be governed by and interpreted in accordance with the substantive laws of the State of Kansas. I agree that any suits or actions by either party related to my employment with Pinnacle Employer Group shall be brought only in the United States District Court for the District of Kansas at Kansas City, Kansas or the District Court for Johnson County, Kansas. I irrevocably and exclusively submit to the jurisdiction of such courts.

*Id.* at 8. Notably, PEG is identified twice in the forum selection clause. *Id.*

Based upon the foregoing and without addressing the validity of the forum selection clause, the Court finds an agreement existed between PEG and Cody, but an agreement did not exist between PSG and Cody. Now the Court must determine whether the forum selection clause agreed to by Cody and PEG can be enforced by PSG.

In the briefing and a declaration, PSG identifies PEG as a "sister affiliate" of PSG. Doc. #3, at 1 n.2; Doc. #4-1, at 2; Doc. #11, at 1. But PSG fails to set forth how PSG and PEG are "affiliated" with one another, or what a "sister affiliate" is. And PSG fails to set forth any legal basis for the Court to enforce an agreement between Cody and PEG in a legal action brought by Cody against PSG. Although Cody briefly raised this particular issue in his opposition to the pending motion (*see* Doc. #10, at 6), PSG did not address this particular issue in its reply. *See* Doc. #11. Without a legal basis permitting PSG to enforce a forum selection clause in an agreement between Cody and PEG, the Court has no choice but to deny PSG's motion to transfer venue.

## III.    CONCLUSION

For the foregoing reasons, PSG's motion to transfer venue is denied without prejudice.

IT IS SO ORDERED.

DATE: February 6, 2019

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
UNITED STATES DISTRICT COURT

5